CHAMBLISS et al. v. SIMMONS.†

(Circuit Court of Appeals, Fifth Circuit.  December 8, 1908.)

No. 1,725.

1. ADVERSE POSSESSION (§ 71*)—INITIATION OF RIGHT UNDER TEXAS STATUTE —DEED DULY RECORDED—CORPORATE DEED—"DEED DULY REGISTERED."

Under Rev. St. Tex. 1895, art. 676, which provides that a corporate deed may be signed by the president or presiding member or trustee, and that when so signed and acknowledged it may be recorded, a deed by a foreign corporation doing business in Texas, executed over its corporate seal and signed and acknowledged by two of its directors under authority of a resolution of its board of directors, is effective, and, when recorded, is "a deed duly registered," and sufficient foundation for proof under the five-year statute of limitation.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 415; Dec. Dig. § 71.*]

2. LIMITATION OF ACTIONS (§ 199*)—ABSENCE OF DEFENDANT—FOREIGN CORPORATIONS.

The question whether a foreign corporation was absent from the state of Texas so as to suspend the running of the statute of limitations in its favor under Rev. St. Tex. 1895, art. 3367, where it depends upon whether agents acting for it in certain classes of matters, but not in all, were "local agents" upon whom service could have been made under Rev. St. Tex. 1895, art. 1223, is to some extent at least one of fact, and its determination by the court as one of law was error.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 727; Dec. Dig. § 199.*]

In Error to the Circuit Court of the United States for the Western District of Texas.

Geo. R. Gillette, for plaintiffs in error.

Robt. L. Ball and L. G. Denman, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. This was the Texas statutory action of trespass to try title to land. The plaintiffs' petition is in the usual form. The defendant pleaded the general issue (not guilty), and limitation under the three, five, and ten years' statutes, respectively, and made a claim of improvements in good faith. The plaintiffs replied disability of coverture, and that defendants had absented themselves from the state during long periods of time, etc. The cause came on for hearing, and, after both parties had closed their evidence, the court announced that he was of opinion that the law and the facts were with the defendant, and instructed the jury that they should return a verdict for the defendant, which was done, and judgment entered thereon. This action of the court is the substance of the errors assigned in 17 specifications, which the plaintiffs make the grounds to support their complaint that the court erred in instructing a verdict

for the defendant. There is but one bill of exceptions shown in the record. The first paragraph of the bill is:

"Be it remembered, that the above entitled and numbered cause came on to be heard on the 3d day of January, A. D., 1907; whereupon all parties appeared by counsel and announced ready for trial, and a jury having been impaneled, composed of A. J. Event and eleven others, the following proceedings were had:

"Plaintiffs introduced the following documentary evidence (embracing chain of title, will of their ancestor, William J. Hardee, tax receipts, depositions of Mrs. Anna Hardee Chambliss as to the plaintiffs' relation to William J. Hardee), and rested. In the bill of exceptions this evidence covers 3½ pages of the printed record. Upon the plaintiffs' resting, the defendants offered proof embracing documentary evidence, evidence by deposition and oral testimony, in the aggregate covering more than 70 pages, and the concluding paragraph of the bill appears in the printed record thus:

" 'And thereupon ———— the court ———— ordered judgment entered, which judgment is as follows:

" 'Final judgment hertofore printed at page 18.

\* \* \* \* \* \* \* \* \* \* \* \*

" 'To which ruling, instruction, verdict, and judgment plaintiffs then and there in open court excepted, upon the ground, in addition to other exceptions herein contained, that said ruling, instruction, verdict, and judgment were against the law and the evidence of this cause, and that defendant was not entitled to said ruling, instruction, verdict, and judgment as against the plaintiffs; and said plaintiffs do here now present the foregoing their bill of exceptions, and respectfully pray the court that the same may be approved and allowed and ordered filed as a part of the record of this. cause and proceedings had therein, all of which is accordingly done.

" 'Signed March 29, A. D. 1907.                [Signed] T. S. Maxey,
                                          " 'Judge of Said Court.' "

Indorsed: "O. K. R. L. Ball," who was attorney for the defendant. The exception is here urged that this bill of exceptions does not bring up all the evidence heard and considered on the trial. An inspection of the bill and the method of its settlement, showing that it was prepared by the counsel for the plaintiff, and approved and marked "O. K." by the counsel for the defendant, satisfies us that the bill is not subject to the exception made to it here. It therein appears from the plaintiffs' evidence that their muniments of title and the deposition establishing the relation of the plaintiffs to William J. Hardee, their ancestor, showed title in them with a right of recovery in this action, subject to be defeated only by the pleas of limitations interposed by the defendant if supported by the proof. The plea of the limitation of three years is not supported by proof of title or color of title. The necessary foundation for proof under the five years' limitation is a deed duly registered. It is claimed by the defendants in this case that the deed from the British & American Mortgage Company to Simmons was a "deed duly registered" within the meaning of the five-years statute of limitation. The mortgage company referred to was a foreign corporation doing business in Texas under permit. The Texas Revised Statutes of 1895 (article 676) provides that corporate deeds be signed by the president or presiding member or trustee, and that when acknowledged by such officers such deed may be recorded. It has been decided that by the terms "a deed duly registered" the statute intends an instrument which is really and in fact a deed, possessing all the legal essentials to constitute it such in law, an instru-

ment by its own terms, or with such aid as the law requires, assuming and purporting to operate as a conveyance; not that it shall proceed from a party having title, or must actually convey title to land, but it must have all the constituent parts, tested by itself, of a good and perfect deed, and that this requirement is more rigid under the statute of five years than under the statute of three years, because under the five years the chain of title is dispensed with. Schleicher v. Gatlin, 85 Tex. 270, 20 S. W. 120, and cases there cited. The authentication clause of the deed here in question is in these words:

"In testimony whereof, the British and American Mortgage Company, Limited, has caused these presents to be signed by two of its directors and its corporate seal to be hereto affixed this 10th day of January, 1900; the said directors having executed this deed in behalf of said British and American Mortgage Company, Limited, by virtue of authorization duly given them by resolution of its American board of directors."

—attested by the seal, and signed, "The British and American Mortgage Company, Limited, A. R. Shattuck, Lionel H. Graham, Directors." Also bearing the names of Charles H. Wilson and Charles P. Rowland.

If it be conceded that this deed is duly executed, there is no question as to its having been duly registered. The majority of the court are of opinion that the deed was duly registered within the meaning of the five-years statute of limitation. The deed under which the British & American Mortgage Company came into possession of and held the land was recorded in the proper county April 1, 1895. The deed from the mortgage company to the defendant Simmons, just above referred to, was dated January 10, 1900. The statute of Texas whereby limitation was permitted to run against married women went into effect July 30, 1896. This action was begun May 13, 1902. There is no dispute that from the time the British & American Mortgage Company, Limited, had its deed to the land in question recorded, it, either by its officers and agents, or by one using the land as a renter, was in actual exclusive control of the premises from the date of West's deed to it (April 1, 1895) to the date of its deed to the defendant Simmons (January 10, 1900), and that he has been in possession and control of the premises continuously since that time. If, then, the defendants were not absent from the state within the meaning of article 3216, Rev. St. 1879, and article 3367, Rev. St. 1895, the bar of the statute of five years was complete, and the court did not err in directing the verdict for the defendant. We do not deem it necessary to notice the contention of the plaintiffs that the defendant Simmons was absent from the state within the meaning of the statute. As to the British & American Mortgage Company, under whom the defendant Simmons holds, the plaintiffs concede that it was present in the state of Texas and on the land, the title to which is here in controversy, at the time of the record of its deed from West (the 1st of April, 1895) and up to May 1, 1896, and that it has been in Texas from September 1, 1899, until the present time. But it insists that between these dates it was absent from the state, having left on or about May 1, 1896, and not having returned until about September 1, 1899. The liability to suit where process can at all

times be served must, in the nature of things, be the test of the running of the statute. (Articles 3216, 3367.) Thompson v. Tex. Land & Cattle Co., Ltd. (Tex. Civ. App.) 24 S. W. 857. During the period of time indicated, from May 1, 1896, to September 1, 1899, the firms of Francis Smith & Co. and H. P. Drought & Co., one successive to the other, and, in relation to the question we are here discussing, substantially the same firm, were located in San Antonio, Tex., and in certain capacities represented the British & American Mortgage Company in that locality. H. P. Drought, the active member at San Antonio of each of the firms, called by the defendant as a witness, testified on cross-examination as follows:

"I was employed as the representative of the British & American Mortgage Company by Mr. Graham, Mr. Parker, and Mr. Shattuck. Mr. Parker was a member of the English board. I was employed by Shattuck and Graham. I was not employed by any written or formal document. I never attended to the collection of any of the business of the British & American Mortgage Company until it got into default. A part of my business is loaning money. I bought some land from the state of Texas for the British & American Mortgage Company because the company asked me to do it. It was not my business to collect money for that company. I did not do any kind of business for them except when they got in bad shape, and then we were employed to do that. Their notes were made payable in New York, and never came here. If a man never paid his note in New York and defaulted, then it was sent to us. I would attend to the business when it was not especially committed to my charge. My letters were sometimes addressed to the British & American Mortgage Company, Ltd., sometimes to A. R. Shattuck, and sometimes to Mr. Graham. The original Mr. Shattuck is the father of the present Mr. Shattuck, who is now the head of the American board. If the British American Mortgage Company had anything to do out here, we did it. If they wanted a representative here tomorrow, we would represent them. I cannot say whether or not I was an agent upon whom service could be had. I can only give the facts and let you consider it as you please. I am not claiming to be an agent. I am just answering the questions, telling you what I did. and what I did not do. We represented them in this locality in all southwest Texas, and we made some leases for them up near Ft. Worth. You will have to determine from the whole facts whether I was the agent of the company for the whole state prior to the time Mr. Graham established an office in Dallas. I did not represent them in all their business in the state, for they had some land in the extreme northern part of the state that we had nothing to do with, and the reason for that was because it was attended to in New York. We made some loans for them in southwest Texas, and some around Ft. Worth. The territorial limits of our agency were not confined to any county at all or any series of counties. They had no district representative. They had no other representative in any other portion of the state. To my knowledge we were the only representatives they had in the state from 1890 up to 1900, the time when Mr. Graham went to Dallas. I have never accepted service for them in any suit; they have never been sued. I attended to such business as the company intrusted to me, but if any business arose here that required attention without consulting the company I attended to it, and expected to be paid for it. It is not a matter of instruction, but I should say a matter of custom."

We have only given what we deem the most material parts of Mr. Drought's testimony.

Article 1223, Rev. St. Tex. 1895, provides:

"In any suit against a foreign * * * corporation, * * * citation or other process may be served on the president, vice president, secretary or

treasurer, or general manager, or upon any local agent within this state, of such corporation. * * *"

There was testimony of other witnesses bearing somewhat on this question and which plaintiffs insisted conflicts with parts of Mr. Drought's testimony, but, having in view alone the testimony of Mr. Drought and the language of the statute, it seems to us that there is apparent force in the question of the plaintiffs' counsel when he asks:

"Is it not certain that if asked to accept service, Smith & Co. or Drought & Co. would have said that they represented the British & American Mortgage Company occasionally in various ways, but are not local agents, and have no authority to accept service?"

Upon the consideration of the proof we have recited, could the learned trial judge have applied his own estimate of the weight of testimony, and found, as a matter of law, that the employment or agency or representative capacity of Smith & Co. or Drought & Co. for the British & American Mortgage Company was of such a character as if service had been made upon them, and the British & American Mortgage Company had failed to appear and judgment been taken by default, would the service so made and the judgment taken by default thereon have concluded the British & American Mortgage Company? It seems to us that the question whether Smith & Co. or Drought & Co. were such local agents within the meaning of the statute was not wholly a question of law, but, to some extent at least, a question of fact to be determined by the jury under proper instructions. In the condition of the case before us we do not deem it our office to propound such instructions as should have been given to the jury on this question. We conclude that the learned trial judge erred in withdrawing the case from the jury.

And the judgment of the Circuit Court is reversed, and the cause remanded.

PARDEE, Circuit Judge, concurs in the judgment.